IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ARGONAUT GREAT CENTRAL       )
INSURANCE COMPANY, etc.,     )
                             )
        Plaintiff,           )
                             )
v.                           ) CIVIL ACTION 14-0506-WS-C
                             )
ALICE ANDREWS, et al.,       )
                             )
        Defendants.          )

**ORDER**

This matter is before the Court on the defendants' motion to dismiss. (Doc. 15). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 15, 20, 21, 28), and the motion is ripe for resolution.

A bit of background is in order. In June 2010, the defendants herein ("the *Andrews* plaintiffs") sued South Alabama Utilities ("SAU") in state court in a dispute over water quality ("the *Andrews* lawsuit"). The parties settled in April 2014, and a consent judgment was entered on October 3, 2014. (Doc. 15 at 2; Doc. 15-1 at 31).

The plaintiff herein ("Argonaut") insured SAU but denied coverage for the *Andrews* lawsuit. In November 2010, SAU sued Argonaut in state court for a declaration that Argonaut owed it defense and indemnity ("the coverage lawsuit"). In May 2013, the state court ruled that Argonaut owed SAU a defense. On October 14, 2014, the state court granted the *Andrews* plaintiffs' motion to intervene in the coverage lawsuit. The *Andrews* plaintiffs filed their complaint in intervention on October 22, 2014. SAU and the *Andrews* plaintiffs filed a motion for summary judgment in December 2014, which motion was set for oral

argument in February 2015.  (Doc. 15 at 2-3; Doc. 15-1 at 12-18, 32; Doc. 28 at 1).

Argonaut filed this action on October 30, 2014, seeking a declaration that it does not owe any duty to the *Andrews* plaintiffs, including that of satisfying the consent judgment in the *Andrews* lawsuit.  (Doc. 1 at 9).  While the *Andrews* plaintiffs are named as defendants herein, SAU (Argonaut's insured), is not.  The relief Argonaut seeks in this action against the *Andrews* plaintiffs is the mirror image of the relief the *Andrews* plaintiffs – and SAU – seek in the coverage lawsuit.

Because the parties are completely diverse and the amount in controversy exceeds $75,000, the Court has subject matter jurisdiction.  However, the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).  In particular, "[i]n its discretion, a district court may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties."  *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).

The Eleventh Circuit has identified a number of factors for a court to consider when weighing whether to exercise its discretion to hear a state-law action "in the face of parallel litigation in the state courts."  *Ameritas*, 411 F.3d at 1331 (internal quotes omitted).  Argonaut denies that the coverage lawsuit is parallel litigation, on the grounds that the *Andrews* plaintiffs intervened before the 30-day period provided in Alabama's direct action statute had expired.  (Doc. 20 at 7-9, 11).[1]  Argonaut concludes that the *Andrews* plaintiffs therefore "did not

---

[1] If the judgment debtor is insured, "and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment."  Ala. Code § 27-23-2.  The consent judgment in the *Andrews* lawsuit was entered on October 3, 2014.  The *Andrews* plaintiffs moved to intervene in the coverage

have standing" to intervene and that the state court "had no subject matter jurisdiction to grant" intervention. (*Id*. at 8). "As the trial court had no subject matter jurisdiction over the Defendants' claims against Argonaut in the State Court case, Defendants have no claims properly pending against Argonaut in the State Court case." (*Id*. at 9).

The unstated, unsupported premise of Argonaut's argument is that any error in the timing of the *Andrews* plaintiffs' intervention was not cured by the passage of time such that they became proper plaintiffs on November 3, 2014. The single case on which Argonaut relies, (Doc. 20 at 8-9), does not remotely address that issue. More importantly, Argonaut has already moved to undo the *Andrews* plaintiffs' intervention on the same grounds, and the state court has denied its motion. (Doc. 20-9 at 2-5; Doc. 28-1 at 2). Therefore, regardless of whether Argonaut believes the state court to be in error, the *Andrews* plaintiffs are in fact parties to the coverage lawsuit.

In a further effort to avoid characterization as parallel litigation, Argonaut scrambles to identify distinctions between the two lawsuits: (1) SAU is not a party to this action; (2) Burkholder Insurance, which SAU sued in the coverage lawsuit, is not a party to this action; (3) SAU sued Argonaut for breach of contract and bad faith, which claims are absent here; and (4) the coverage lawsuit deals "exclusively" with duty to defend, leaving this as the only action addressing duty to indemnify. (Doc. 20 at 11-12).

It is true that SAU is not a party to this action, but Argonaut has not explained how this works to its advantage.[2] As the Court has noted, " [i]n this context, suits are parallel if *substantially* the same parties litigate substantially the same issues in different forums." *Pennsylvania National Mutual Casualty*

---

lawsuit in June 2014, the motion was granted on October 14, 2014, and the complaint in intervention was filed on October 22, 2014.

[2] Nor has Argonaut explained why it did not name its insured as a defendant herein, despite SAU's continuing interest in payment under the policy. *See infra* note 3.

*Insurance Co. v. King*, 2012 WL 280656 at *4 (S.D. Ala. 2012) (emphasis added, internal quotes omitted).  Especially since SAU and the *Andrews* plaintiffs share a common interest in the policy proceeds,[3] the two actions involve substantially the same parties despite the absence of SAU.

That the state suit is broader than this one, in that it includes claims against Argonaut for compensatory and punitive damages and claims against a third party, is likewise immaterial to whether the two actions are parallel.  In *Ameritas*, the insurer's federal lawsuit, as here, sought only a declaration of rights and obligations under its policy, while in the state lawsuit the insured sued the insurer for breach of contract and negligence and an agent and his employer for negligence.  Despite these distinctions, the Eleventh Circuit described the insured's lawsuit as  "a parallel state court action."  411 F.3d at 1329-30.

If it were correct that the coverage lawsuit involves only the duty to defend, the two actions probably could not be considered parallel.  But both SAU's complaint and the *Andrews* plaintiffs' complaint in intervention expressly assert a duty to indemnify/pay amounts due under the settlement agreement.  (Doc. 15-1 at 8, 23-25).  Argonaut elsewhere admits as much.  (Doc. 20 at 13).

In sum, the coverage lawsuit constitutes parallel state litigation, triggering application of the *Ameritas* factors.  With little more than its ipse dixit, Argonaut posits that the first, third, fourth, fifth, sixth and eighth *Ameritas* factors either weigh in its favor or are neutral, such that the Court should exercise its discretion in favor of hearing this action.  (Doc. 20 at 12-13).  The Court disagrees.

The second *Ameritas* factor is "whether the judgment in the federal declaratory action would settle the controversy."  411 F.3d at 1331.  As noted,

---

[3] By the terms of the settlement, SAU shares in any recovery of the insurance proceeds, since it has paid a portion of the settlement amount out of its own pocket and has incurred expenses due to the denial of coverage.  (Doc. 21 at 2).  Contrary to Argonaut's assertion, (Doc. 20 at 2), the consent judgment (which incorporated the settlement agreement) does not limit the source of payment on the judgment to proceeds of Argonaut's policy; only the "yet unpaid portion" of that amount is so limited.  (Doc. 20-3 at 2).

Argonaut did not name SAU as a party to this lawsuit, even though SAU has a patent interest in the policy proceeds.  Thus, this action cannot bind SAU, and the coverage lawsuit will have to proceed to its conclusion – not only as to the ancillary issues but also as to the very issue presented herein – regardless of what happens here.  Argonaut wisely does not suggest that this factor favors it or is neutral.  On the contrary, this factor triggers application of the principle that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."  *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495 (1942).  It is up to Argonaut to show that application of the other *Ameritas* factors removes the epithet, "gratuitous," so as to justify interference with an existing, more comprehensive state lawsuit.  Argonaut has not come close to doing so.

As for the first *Ameritas* factor, Argonaut concedes that only questions of Alabama law, involving an Alabama insured and an Alabama judgment creditor, are presented in either lawsuit, but it nevertheless denies that Alabama has "any interest" in resolving those issues.  (Doc. 20 at 12).  That is a dubious proposition, as two rulings by this Court attest.  *See, e.g., Travelers Casualty and Surety Co. of America, Inc. v. East Beach Development, LLC*, 2007 WL 3407049 at *7 (S.D. Ala. 2007) (Alabama had a "significant interest" in having its courts resolve state-law issues concerning events occurring in Alabama); *Canal Insurance Co. v. Morgan*, 2007 WL 174387 at *3 (S.D. Ala. 2007) (same).  Moreover, the state court has already invested time and effort in the coverage lawsuit, having resolved the issue whether Argonaut has a duty to defend (it does) and having the issue whether Argonaut has a duty to indemnify/pay the settlement amount teed up for resolution on motion for summary judgment this very month.  (Doc. 15 at 2-3; Doc. 28 at 1).  In addition to considerations of efficiency, the state has an interest in finishing the work it has begun and advanced almost to conclusion.  The first *Ameritas* factor weighs against Argonaut.

As for the third *Ameritas* factor, Argonaut argues that proceeding in this action would "serve a useful purpose" by "settl[ing] all claims and clarify[ing] all of the issues" the *Andrews* plaintiffs raise in the coverage lawsuit.  (Doc. 20 at 12).  All this shows, however, is that this action is redundant with (though less comprehensive than) the coverage lawsuit, which is no argument in favor of exercising jurisdiction.  *See East Beach*, 2007 WL 3407049 at *8 (where the state court was "fully equipped to resolve these questions and provide this clarification as well," this factor did not favor exercising jurisdiction); *Morgan*, 2007 WL 174387 at *3 (same).  Since this action serves no useful purpose in any relevant sense, the third *Ameritas* factor weighs against Argonaut.

As for the fourth *Ameritas* factor, Argonaut accuses the *Andrews* plaintiffs of "procedural fencing" by intervening in the coverage lawsuit before the 30-day period of Section 27-23-2 expired.  (Doc. 20 at 12-13).  The force of this argument is blunted by the state court's rejection of Argonaut's challenge to the timeliness of the intervention, and it is eliminated by Argonaut's unexplained decision not to name SAU as a defendant herein, which decision (given Argonaut's emphasis on the point in its briefing) appears to have been made in an effort to persuade the Court that this action is not parallel to the coverage lawsuit, so as to avoid application of the *Ameritas* factors and thus improve the chances the Court would exercise jurisdiction.  The fourth *Ameritas* factor is at best neutral.

As for the fifth *Ameritas* factor, Argonaut concedes that proceeding herein would "increase the friction between" federal and state courts if the *Andrews* plaintiffs are "proper parties to the State Court action."  (Doc. 20 at 12).  Since the state court has resolved that issue against Argonaut, this factor weighs against Argonaut.  "For this Court to swoop in and take a slice (but only a slice) of that dispute away from the state court via Travelers' declaratory judgment action would undoubtedly create friction and unnecessary encroachment on the state-court proceedings."  *East Beach,* 2007 WL 3407049 at *8.  While a ruling by the Court could not bind SAU or the state court, "the possibilities of inconsistent

judgments from both forums promis[e] increased friction." *Gibson v. Jackson*, 578 F.2d 1045, 1050 (5th Cir. 1978) (internal quotes omitted). The fifth *Ameritas* factor weighs against Argonaut.

As for the sixth *Ameritas* factor, Argonaut denies that "there is an alternative remedy that is better or more effective" because in either forum the court must look to the policy and the claims made to resolve the coverage issue. (Doc. 20 at 13). By Argonaut's own argument, this factor is at best neutral. Looking at the entirety of issues raised and parties involved, however, it is plain that the state court is the superior forum because there, and only there, can the entire controversy be resolved. As this Court has noted, "the concepts of 'better or more effective' logically embrace efficiency considerations …." *Westchester Surplus Lines Insurance Co. v. Romar House Association, Inc*., 2008 WL 5412937 at *6 (S.D. Ala. 2008); *see also Morgan*, 2007 WL 174387 at *3 ("[T]he Clarke County action can more effectively and efficiently decide the overlapping issues in these cases because that action encompasses the parties' entire dispute …."). The sixth *Ameritas* factor weighs against Argonaut.

As for the eighth *Ameritas* factor, Argonaut insists the state court "is in no better position to evaluate the factual issues than the federal court." (Doc. 20 at 13). Because the state court is already immersed in those issues, however, it is in a better position to do so. *Romar House*, 2008 WL 5412937 at *6; *East Beach*, 2007 WL 3407049 at *10; *Morgan*, 2007 WL 174387 at *4 ("Rather than having two courts duplicate effort in scrutinizing and assessing the underlying facts, a far more sensible and efficient approach is for the state court that is already tasked with examining those facts in the underlying case to apply those same facts to the pending claims for declaratory relief."). The eighth *Ameritas* factor weighs against Argonaut.

Argonaut does not argue that the seventh or ninth *Ameritas* factors support its position. (Doc. 20 at 12-13). The Court agrees with that assessment. *See East Beach*, 2007 WL 3407049 at *11 ("Federal common or statutory law

unquestionably do[es] not dictate a federal resolution of every commercial dispute affecting interstate commerce ….”); *Morgan*, 2007 WL 174387 at *4 (“This [ninth] factor unambiguously weighs in favor of abstention [because] Canal’s Complaint raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law.”).

In sum, the *Ameritas* factors overwhelmingly counsel against proceeding with this action in the face of the coverage lawsuit.  The Court therefore exercises its discretion in favor of declining to hear this action.

For the reasons set forth above, the defendants’ motion to dismiss is **granted in part**.  This action is **dismissed without prejudice**.  To the extent the defendants seek dismissal with prejudice, (Doc. 15 at 1), their motion is **denied**.[4]

DONE and ORDERED this 19th day of February, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Dismissal with prejudice would constitute a ruling on the merits of the coverage dispute, which is precisely what the defendants ask the Court to avoid and precisely what the Court declines to provide.